UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MEGAGEN IMPLANT CO. LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>BIOTECH DENTAL LLC,<br>BIOTECH DENTAL USA,<br>CAREY LYONS, and DAVID<br>SINGH, )<br><br>Defendants. ) | CIVIL ACTION NO. 23-_____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

For its Complaint against Defendants Biotech Dental LLC and Biotech Dental USA (together, the Corporate Defendants), Carey Lyons, and David Singh (together, the Individual Defendants) (the Corporate Defendants and the Individual Defendants together, the Defendants), Plaintiff MegaGen Implant Co. Ltd. (MegaGen) alleges as follows:

## INTRODUCTION

1.    MegaGen brings this action to stop the Defendants from selling counterfeit dental implant products, infringing MegaGen's federally registered trademarks, and misleading dentists and distributors of dental products. MegaGen also brings this action to put an end to Defendants' trade libel and tortious interference with MegaGen's customers.

2.    MegaGen is a leading manufacturer of dental implants. Since 2011, dentists and oral surgeons have successfully installed MegaGen's groundbreaking ANYRIDGE dental implant system in patients throughout the United States and around the world.

*ACTIVE 687900380v1*

3.      The Corporate Defendants—both of which are controlled by the Individual Defendants—sell counterfeit ANYRIDGE products. Without permission from MegaGen, the Corporate Defendants sell dental implant products under MegaGen's federally registered ANYRIDGE trademark (the Counterfeit Products). Defendants' trading off MegaGen's reputation and goodwill is knowing and intentional. It is a classic—and brazen—case of counterfeiting.

4.      Perhaps even more troubling, however, is that, upon information and belief, the Counterfeit Products are lower in quality and inferior to MegaGen's authentic ANYRIDGE-branded products. Yet the Defendants sell these Counterfeit Products to dentists and oral surgeons who are under the mistaken impression that they have purchased authentic MegaGen products—dentists and oral surgeons who, in turn, surgically implant the Counterfeit Products in unsuspecting patients. For the reasons described herein, Defendants' conduct not only harms MegaGen, but poses a serious safety risk to the public.

5.      Defendants have compounded their unlawful trademark infringement and counterfeiting by interfering with MegaGen's existing and prospective customer relationships. Defendants have made—and, upon information and belief, continue to make—false statements concerning the quality and reliability of MegaGen's products to dentists and to MegaGen's other current and prospective business partners.

6.      MegaGen respectfully requests that this Court enjoin the Defendants' unlawful actions and award MegaGen monetary damages—including statutory damages up to $2,000,000 for each counterfeit use of the ANYRIDGE mark—and attorneys' fees.

*ACTIVE 687900380v1*

**PARTIES**

7.     MegaGen is a South Korean company with a principal place of business located at 45, Secheon-ro 7-gil Dasa-eup Dalseong-gun Daegu, South Korea.

8.     Upon information and belief, Defendant Biotech Dental LLC (Biotech) is a Delaware limited liability company with its principal place of business located at 145 Cedar Lane, Englewood, New Jersey.

9.     Upon information and belief, Defendant Biotech Dental USA (Biotech USA) is a New Jersey company with its principal place of business located at 145 Cedar Lane, Englewood, New Jersey.  Upon information and belief, Biotech USA is affiliated with Biotech.

10.     Upon information and belief, Defendant Carey Lyons is the former Chief Executive Officer of Integrated Dental Systems (IDS) and, as described below, at all times relevant served in an executive leadership position with Biotech and Biotech USA.  Mr. Lyons is a citizen of the State of New York with a last known residential address at 140 West End Avenue, Apartment 17G, New York, New York.

11.     Upon information and belief, Defendant David Singh is the former Chief Operating Officer of IDS and, as described below, at all times relevant served in an executive leadership position with Biotech and Biotech USA.  Mr. Singh is a citizen of the State of New Jersey with a last know residential address at 69 Windsor Road, Tenafly, New Jersey.

**JURISDICTION AND VENUE**

12.     This is an action for trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, trademark infringement and unfair competition under N.J.S.A. § 56:3-13.16 and N.J.S.A. § 56:4-1, and for unfair competition, tortious interference, and trade libel under New Jersey common law.

- 3 -

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121 because one or more of MegaGen's claims arise under a federal statute, the Lanham Act.

14.     This Court has supplemental jurisdiction over MegaGen's New Jersey statutory and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367 because the claims are so related to the claims under the Lanham Act that they form part of the same case or controversy under Article III of the United States Constitution.

15.     The exercise of *in personam* jurisdiction over the Corporate Defendants comports with the laws of the State of New Jersey and the constitutional requirements of due process because the Corporate Defendants reside in this judicial district and, on information and belief, the Corporate Defendants and/or their agents transact business and/or offer to transact business within the State of New Jersey.

16.     The exercise of *in personam* jurisdiction over the Individual Defendants comports with the laws of the State of New Jersey and the constitutional requirements of due process because the Individual Defendants either reside in this judicial district and/or have sufficient minimum contacts with State of New Jersey.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 because a substantial part of the events or omissions giving rise to MegaGen's claims occurred in this judicial district.

## FACTS APPLICABLE TO ALL CLAIMS

### MegaGen

18.     Founded in 2002, MegaGen is a leading manufacturer and innovator of dental implant systems. MegaGen owns and operates the largest implant manufacturing facility in Asia

- 4 -

and incorporates state-of-the-art technology for the production and development of its dental implant systems. MegaGen sells products to dentists and oral surgeons across the United States and around the world through subsidiaries, distributors, and affiliates.

<b><u>Dental Implants</u></b>

19.     A dental implant is a medical device that is surgically implanted in a patient's upper or lower jawbone. The implant permanently replaces and acts as the root of a missing tooth, providing a base for the replacement of the tooth. Dental implants are considered the standard of care for the replacement of a single tooth, multiple teeth, and full mouth reconstruction.

20.     Dental implants are placed by a dentist or dental specialist by drilling into the jawbone to insert the implant. After the gum tissue and bone have been given sufficient time to heal, a prosthetic called an "abutment" is connected to the implant and secured with a screw. An artificial crown or other dental restoration is then affixed to the abutment. An image reflecting the key components of a dental implant is reproduced below:



- 5 -

**The ANYRIDGE Dental Implant System**

21.     Since at least December 2011, MegaGen has manufactured, marketed and sold a dental implant system under the ANYRIDGE trademark. In contrast to traditional implants, the ANYRIDGE system provides groundbreaking biological benefits that have been clinically proven to shorten healing time and produce predictable, long-term treatment results. Importantly, ANYRIDGE made it possible for dentists to achieve high initial implant stability in the where the tooth was removed (called an "extraction socket") as well as in soft or poor bone quality.

22.     The image below depicts the ANYRIDGE design concept as it relates to different bone densities. An implant with narrower threads is used in the hardest of bone types (*see* D1 below), and an implant with wider threads is utilized in the softest of bone types (*see* D4 below). While the thread length varies (*see* D1-D4 below), the diameter of the core—the body of the implant—remains the same for all models.



In contrast to the minimally invasive approach of the ANYRIDGE system, the design of traditional implant systems generally involves a one-size-fits-all approach, which results in more bone removed from a patient's jawbone as the diameter of the core increases. ANYRIDGE's unique ability to achieve high stability in soft bone leads to successful patient outcomes largely unmatched by other dental implant systems.

- 6 -

23.     The ANYRIDGE implant system includes other unique design features. One such feature is a five-degree "morse taper" abutment connection, which helps eliminate problems associated with loose screws by "cold-welding" the abutment to the implant to create an airtight seal. Even if a screw becomes loose, an ANYRIDGE abutment cannot be separated from the implant without an abutment removal tool. Another unique feature is MegaGen's proprietary "blue XPEED" surface treatment, which promotes increased bone-to-implant contact and results in faster and stronger fusion of the implant with the bone.

24.     MegaGen has expended significant resources advertising and promoting the ANYRIDGE implant system and trademark, prominently featuring ANYRIDGE in print and online advertising, on its website, and at tradeshows and industry events. Representative examples of marketing materials for ANYRIDGE are reproduced below:



*ACTIVE 687900380v1*





     25.     Because of its unique design, safety, and track record of success, the ANYRIDGE dental implant system has achieved significant recognition in the dental implant industry. Since 2017, the ANYRIDGE implant system has received the Trusted Quality Seal of Approval from Clean Implant Foundation, an international non-profit organization, assuring clinicians and patients that MegaGen's implants are safe and clean from impurities. The ANYRIDGE implant system also obtained the "CE MDR" (Certification by Conformite Europeenne) signifying the system meets quality and safety standards required to export to Europe, making MegaGen the first Korean manufacturer to receive such a certification.

- 8 -

### The ANYRIDGE Trademark

26.     Through its extensive use and promotion of goods sold under the ANYRIDGE trademark, MegaGen has cultivated substantial brand loyalty, recognition, and goodwill. As a result, implants bearing the ANYRIDGE trademark are recognized by dentists, oral surgeons, distributors, and others in the dental trade as high-quality, trusted products sourced from MegaGen. The goodwill associated with the ANYRIDGE trademark is of significant value to MegaGen.

27.     As a result of its longstanding use, MegaGen owns common law trademark rights in the ANYRIDGE mark. MegaGen has also registered the ANYRIDGE trademark with the United States Patent and Trademark Office. *See* U.S. Trademark Registration No. 4,120,099 (April 3, 2012). Attached hereto as **Exhibit A** is a true and accurate copy of MegaGen's federal registration for ANYRIDGE.

### MegaGen USA, Inc.

28.     At all times relevant, MegaGen USA, Inc. (MegaGen USA) was a New Jersey corporation with a principal place of business in Englewood Cliffs, New Jersey. MegaGen USA was a wholly owned subsidiary of MegaGen. At all times relevant, MegaGen USA was an authorized distributor of MegaGen products — including the ANYRIDGE implant system — in the United States.  MegaGen USA was dissolved on December 10, 2020.

### Integrated Dental Systems

29.     At all times relevant, IDS was a provider of dental implants. IDS sold, advertised, and distributed dental implant products through dental supply dealers in North America. From October 26, 2012, to October 16, 2020, IDS's Chief Executive Officer, Carey Lyons, and Chief Operating Officer, David Singh, managed IDS's day-to-day operations.

- 9 -

30.     Upon information and belief, at all times relevant, Mr. Lyons owned 55.23% and Mr. Singh owned 24.50% of the membership interest in IDS. In addition to being majority owners of the closely held company, Messrs. Lyons and Singh personally guaranteed the repayment of a credit facility from Connect One Bank to IDS in an amount up to $2,000,000.00. Mr. Lyons also personally guaranteed the repayment of a $150,000.00 loan to the U.S. Small Business Administration which loan was, upon information and belief, used to operate IDS.

**Agreements Between MegaGen USA and IDS**

31.     On October 24, 2013, MegaGen USA entered into a First Amended Asset Purchase Agreement (APA) with IDS. Under the APA, MegaGen USA agreed to sell certain assets to IDS, including MegaGen USA's customer lists, inventory and accounts receivable. MegaGen USA also agreed to sell certain intellectual property, including the MEGAGEN USA trademark, the www.megagen.us domain name, and the www.megagenus.com domain name. IDS did not acquire the ANYRIDGE trademark, which was owned by MegaGen (not MegaGen USA).

32.     Contemporaneous with entering into the APA, MegaGen and IDS entered into a Supply and Distribution Agreement dated October 24, 2013 (Supply Agreement). Under the terms of the Supply Agreement, IDS became the exclusive distributor of the ANYRIDGE implant system and certain other implant products manufactured by MegaGen. IDS, as the "exclusive seller, reseller and distributor" of these products, was required to purchase a minimum number of products from MegaGen each year. Per the terms of the Supply Agreement, MegaGen granted IDS "a royalty-free, non-exclusive license and right to use all of MegaGen's trade names, trade styles or trademarks," including the ANYRIDGE mark.

- 10 -

33.     IDS defaulted in its payment obligations under the Supply Agreement. As a result, on September 6, 2019, MegaGen sent a notice of termination of the Supply Agreement and later commenced an arbitration proceeding against IDS seeking damages arising from IDS's breach of the Supply Agreement.

34.     Following the termination of the Supply Agreement, R2Gate America, Inc. (d/b/a MegaGen America), a wholly-owned subsidiary of MegaGen, began selling MegaGen's dental implant systems, including the ANYRIDGE system, throughout the United States. This subsidiary of MegaGen continues to sell goods under the ANYRIDGE mark today.

**IDS Commences Chapter 11 Bankruptcy Proceeding**

35.     On October 7, 2020, IDS filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of New Jersey. Upon information and belief, on the same day IDS filed its petition, Biotech registered to do business in New Jersey.

36.     On October 16, 2020, Biotech and IDS entered into an Asset Purchase Agreement, pursuant to which Biotech agreed to purchase substantially all of IDS's assets and assumed certain of IDS's liabilities. Among other things, pursuant to the Asset Purchase Agreement, Biotech acquired IDS's inventory and assumed IDS's lease for 145 Cedar Lane, Englewood, New Jersey.

37.     The Bankruptcy Court approved the sale of IDS's assets to Biotech on December 7, 2020. The sale order made clear that the assets acquired by Biotech did not include the ANYRIDGE and MEGAGEN trademarks. *Id.* at ¶25(b). It also confirmed that MegaGen owns the ANYRIDGE and MEGAGEN trademarks and provided that, by way of the sale order, IDS was abandoning any interest it may have had in those marks. *Id.* at ¶25(a).

- 11 -

38.     To effectuate certain obligations arising under the sale order, on December 7, 2020, IDS and MegaGen entered into two separate agreements: a Confirmatory Trademark Assignment, and a Confirmatory Domain Name Transfer Agreement. Under the terms of the Confirmatory Trademark Assignment, IDS acknowledged and agreed that MegaGen was the owner of the MEGAGEN and ANYRIDGE trademarks and that IDS had assigned to MegaGen any interest IDS had in the ANYRIDGE and MEGAGEN trademarks.

39.     The Confirmatory Trademark Assignment and Confirmatory Domain Name Transfer Agreement were executed by Mr. Singh on behalf of IDS. Thus, Mr. Singh was aware that IDS had no interest in the MEGAGEN and ANYRIDGE trademarks nor any authority to sell products using the MEGAGEN and ANYRIDGE trademarks. Upon information and belief, Mr. Lyons was also aware of the limitations imposed by the two agreements.

40.     Upon information and belief, following the purchase of IDS's assets by Biotech and at all relevant times thereafter, Mr. Singh and Mr. Lyons ran the day-to-day operations of the IDS business.

41.     Upon information and belief, at all relevant times, there were no substantial or material changes to IDS's management, personnel, and general business operations following the purchase of IDS's assets by Biotech. Indeed, IDS continues to hold itself out to the public as an active business entity (and/or a Biotech affiliated company), notwithstanding Biotech's purchase of substantially all of its assets. On his LinkedIn page, Mr. Lyons identifies himself and the "Founder CEO at integrated dental systems" now known as "Biotech Dental."

42.     Biotech sells its dental implant products online at biotechdentalusa.com and via social media, including on Facebook (facebook.com/biotechdentalusa) and LinkedIn

- 12 -

([linkein.com/company/biotechdentalusa](linkein.com/company/biotechdentalusa)). Biotech identifies itself as "one of the largest providers of end-to-end dental solutions."

## MegaGen Files Proof of Claim in the Bankruptcy Proceeding

43.    As of October 7, 2020, when IDS filed its bankruptcy petition, IDS owed MegaGen $8,863,145.95 under the Supply Agreement and $1,191.262 under a separate agreement. On December 15, 2020, MegaGen timely filed a proof of claim in the bankruptcy proceeding seeking relief arising from damages incurred as a result of, among other things, IDS's breach of the Supply Agreement.

44.    On June 9, 2021, the court in the bankruptcy proceeding approved a Settlement Agreement and Mutual Release among IDS, MegaGen, and others (Settlement Agreement) in which IDS "acknowledged and agreed that it is no longer authorized or permitted to, and shall not, directly or indirectly, distribute or sell any MegaGen products, including those bearing any trademark owned by MegaGen." The parties' mutual release specifically carved out from the release "any claims for infringement of MegaGen's intellectual property or from violations of the Lanham Act or other applicable law relating to conduct relating to MegaGen's products, including the sale of counterfeit or obsolete products."

45.    Mr. Lyons signed the Settlement Agreement on behalf of IDS and was therefore aware of (and approved) the terms of the Settlement Agreement, including IDS's acknowledgement that IDS "was no longer authorized or permitted to, and shall not, directly or indirectly, distribute or sell any MegaGen products, including those bearing any trademark owned by MegaGen." Upon information and belief, Mr. Singh was also aware of the terms of the Settlement Agreement.

- 13 -

**Biotech Solicits MegaGen's Customers Under False Pretenses**

46.    Subsequent to the closing of the Asset Purchase Agreement with Biotech, IDS publicly announced its affiliation with the "Biotech Dental Group." In an October 2022 letter printed on "Biotech Dental USA" letterhead, Mr. Lyons stated that "ever-increasing reports of AnyRidge implant failures and fracturing" led IDS to "merge[] with Biotech Dental and to bring their market leading KONTACT Implant System to the USA." The letter further stated that, "[a]s a partner and not a distributor, we will be able to provide more support services and better value." The letter concluded by stating that Mr. Lyons was "excited that we will be offering a better, more robust, innovative implant system that's a greater value, supported by a team of local dental implant specialists…." Upon information and belief, the letter was sent to dentists, oral surgeons, and others in the dental industry who have purchased (or have considered purchasing) the ANYRIDGE implant system. Attached here as **Exhibit B** is a true and accurate copy of the October 2022 letter.

47.    The October 2022 letter makes no reference to the bankruptcy proceeding, leading recipients of the letter to infer that IDS chose to become affiliated with Biotech not because it filed for bankruptcy (and owed MegaGen approximately $10 million), but because of "reports of AnyRidge implant failures and fracturing." Upon information and belief, the letter was intended to interfere with MegaGen's relationships with dentists and oral surgeons using the ANYRIDGE implant system and to solicit those doctors to switch to Biotech's "Kontact" implant system.

48.    In addition to the October 2022 letter, upon information and belief, dentists using (or formerly using) the ANYRIDGE implant system have been told by Biotech sales representatives that MegaGen implants, including the ANYRIDGE implant system, have

- 14 -

experienced implant failures and fracturing and that Biotech's implant products are superior.

**Defendants Sell Counterfeit ANYRIDGE Products**

49.     Subsequent to the Court's approval of the bankruptcy sale order and Settlement Agreement—at a point in time when neither IDS nor Defendants had any right to use the ANYRIDGE trademark—Defendants began selling dental implant products labeled as "AnyRidge" products. These products are not genuine, ANYRIDGE dental implant products manufactured by MegaGen. They are counterfeit products.

50.     By way of example, on December 7, 2021, Defendants shipped Counterfeit Products to a dentist in Pennsylvania. The shipping label identified the shipping party as "integrated dental systems / A Biotech Dental Company." According to the "Packing List" (printed on IDS letterhead), Defendants shipped the following products: (i) "AnyRidge Lab Analog PD 4-5.5 Serial/Lot No. 20972358" and (ii) "AnyRidge Digital Lab Analog Serial/Lot No. GST260121AT492." The "Packing List" is reproduced with redactions and highlighted information below:

- 15 -



51.     As of December 7, 2021, IDS had no right to sell any MegaGen products, including the ANYRIDGE implant system. By executing the Settlement Agreement approved by the Bankruptcy Court on June 9, 2021—only six months earlier—IDS had acknowledged and agreed that it was "no longer authorized or permitted to, and shall not, directly or indirectly, distribute or sell any MegaGen products, including those bearing any trademark owned by MegaGen."

52.     Notwithstanding the information on the December 7, 2021, Packing List, the products Defendants shipped were *not* genuine ANYRIDGE dental implant products manufactured by MegaGen. The shape of the Counterfeit Products are slightly different than authentic ANYRIDGE products, and the colors are a different shade.

- 16 -

53.     Not only are the products themselves different than authentic ANYRIDGE dental products, but the packaging differs from the packaging used by MegaGen.

54.     MegaGen packages ANYRIDGE dental implant products via an automated process in sterile, rigid plastic containers designed to protect the product from damage during shipping and handling.  Authentic MegaGen products—which are shipped directly to dentists by an authorized distributor—are marked "AR" representing the product as an ANYRIDGE implant. In contrast, Defendants' Counterfeit Products are shipped in flimsy plastic bags, which, upon information and belief, are not sterile and provide little or no protection to the products. The plastic bags identify the implants as "AnyRidge" products, but the "Lot" and "SN" (serial number) on the packaging bear no relation to the manner in which MegaGen marks/identifies its products.

55.     Images of the Counterfeit Products Defendants sold/shipped to the dentist in Pennsylvania and corresponding images of authentic ANYRIDGE dental implant products in genuine MegaGen packaging are depicted below:

*ACTIVE 687900380v1*

Defendants' Counterfeit Products

Front Image                                     Back Image

      

MegaGen's Products

Front Image                                     Back Image

      

56.     Upon information and belief, the Defendants are also selling the Counterfeit Products through a distributor network. In November 2022, for example, the Defendants shipped implant products to a dentist in New Jersey. According to the "Packing List" printed on Biotech letterhead, the Defendants shipped the following products: (i) "AnyRidge Lab Analog PD 4-5.5 Serial/Lot No. 20972A310," (ii) "AnyRidge Transfer IC Hex PD 4 PH Serial/Lot No. AX1000009377," and (iii) "AnyRidge ZrGen Abutment 5.5 Serial/Lot No. IDS170621AT004."

- 18 -

The Packing List, which is reproduced with redactions and highlighted information below, lists Benco Dental as the customer to be billed and a dentist in New Jersey as the person to whom the products are to be shipped. Upon information and belief, Benco Dental is one of the Defendants' distributors.



57.     Like the example above, the products and product packaging shipped to the New Jersey dentist are materially different than genuine ANYRIDGE dental implant products.

- 19 -

Defendants' Counterfeit Products

Front Image                              Back Image

   

MegaGen's Products

Front Image                              Back Image

   

58.     Upon information and belief, the Defendants are selling the Counterfeit Products like these to other dentists (directly and/or through a distribution network) across the United States, representing to customers that the products are genuine ANYRIDGE dental implant products when, in fact, they are not. Upon information and belief, the Counterfeit Products are of inferior quality and design when compared to genuine ANYRIDGE dental implant products. Indeed, a dentist in New York attempted to return "defective" MegaGen products to MegaGen only to discover the products were not genuine MegaGen products. Perhaps most remarkable is that Biotech *itself* returned a supposedly "defective" product to MegaGen requesting a refund or replacement product. But the product shipped by Biotech *was a Counterfeit Product*. In other

- 20 -

words, Biotech returned a Counterfeit Product *sold by Biotech* because the Counterfeit Product was defective.

59.    The Defendants' sale of the Counterfeit Products is misleading dentists, oral surgeons, and distributors, and causing harm to MegaGen's reputation and goodwill. But the Defendants' wrongful conduct is also presenting serious safety risks to patients. It is well-known in the dental industry that using an abutment made by one manufacturer with an implant made by a different manufacturer may cause "micromovements" that do not occur when an abutment and implant is made by the same manufacturer. These micromovements can cause leakage, infection, inflammation of gum tissue, bone loss, and failure of the dental implant system. Use of a counterfeit abutment from Defendants, on the one hand, with a genuine ANYRIDGE implant, on the other hand, could result in one or more of these problems.

## CAUSES OF ACTION

### COUNT I
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)
### (Against the Corporate Defendants)

60.    MegaGen repeats and realleges the preceding paragraphs as if fully set forth herein.

61.    MegaGen owns a valid federal trademark registration for the ANYRIDGE mark for dental implants and related products.

62.    The Corporate Defendants have sold, offered to sell, marketed, distributed, and advertised—and continue to sell, offer to sell, market, distribute, and advertise—products under the ANYRIDGE trademark without MegaGen's permission.

- 21 -

63.     The Corporate Defendants have knowledge of MegaGen's rights in the ANYRIDGE trademark but are nevertheless offering goods for sale under the ANYRIDGE trademark.

64.     The Corporate Defendants' willful, intentional, and unauthorized use of the ANYRIDGE trademark is likely to cause—and is causing—confusion, mistake, and deception as to the source, origin, and quality of the Counterfeit Products.

65.     The Corporate Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. § 1114.

66.     The Corporate Defendants' infringement and counterfeiting has caused, and will continue to cause, irreparable harm to MegaGen, including injury to MegaGen's business, reputation, and goodwill, for which there is no adequate remedy at law. MegaGen is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining the Corporate Defendants, their agents, employees, representatives, and all persons acting in concert with the Corporate Defendants from engaging in future acts of infringement and counterfeiting.

67.     Pursuant to 15 U.S.C. § 1117, MegaGen is entitled to recover from the Corporate Defendants monetary damages, including the Corporate Defendants' profits, damages sustained by MegaGen, and the costs of this action. In addition, because the Corporate Defendants' unlawful conduct was undertaken willfully and in bad faith, this an exceptional case, entitling MegaGen to an award of treble damages, statutory damages, and attorneys' fees.

## <u>COUNT II</u>
## VICARIOUS AND CONTRIBUTORY TRADEMARK INFRINGEMENT AND COUNTERFEITING
### (Against the Individual Defendants)

68.     MegaGen repeats and realleges the preceding paragraphs as if fully set forth herein.

69.     As set forth above, the Corporate Defendants have infringed upon MegaGen's federally registered trademarks and engaged in counterfeiting in violation of 15 U.S.C. §1114.

70.     Upon information and belief, at all times relevant, the Individual Defendants exercised pervasive control over the Corporate Defendants and directed the Corporate Defendants to engage in unlawful infringement and counterfeiting. As a result of the unlawful infringement and counterfeiting directed by the Individual Defendants, the Individual Defendants benefited financially.

71.     As a result of the Individual Defendants' unlawful conduct, MegaGen has suffered—and will continue to suffer—irreparable injury, including injury to MegaGen's business, reputation, and goodwill, for which there is no adequate remedy at law. MegaGen is entitled to an injunction restraining the Individual Defendants from engaging in future acts of vicarious and contributory infringement and counterfeiting.

72.     MegaGen is entitled to recover from the Individual Defendants monetary damages caused by the Individual Defendants' vicarious and contributory infringement and counterfeiting, including the Individual Defendants' profits, damages sustained by MegaGen, and the costs of this action. In addition, because the Individual Defendants' unlawful conduct was undertaken willfully and in bad faith, this an exceptional case, entitling MegaGen to an award of treble damages, statutory damages, and attorneys' fees.

- 23 -

<u>**COUNT III**</u>
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. §1125(a))**
**(Against the Corporate Defendants)**

73.     MegaGen repeats and realleges the preceding paragraphs as if fully set forth herein.

74.     The Corporate Defendants' promotion, marketing, offering for sale, and sale of the Counterfeit Products has created—and is creating—a likelihood of confusion, mistake, and deception among consumers as to the affiliation, connection, or association with MegaGen and/or the origin, sponsorship, or approval by MegaGen of the Counterfeit Products.

75.     By using the ANYRIDGE trademark in connection with the sale of the Counterfeit Products, the Corporate Defendants have created a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

76.     The Corporate Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products involves the use of counterfeit marks and is a willful violation of 15 U.S.C. §1125.

77.     The Corporate Defendants' infringement and counterfeiting has caused, and will continue to cause, irreparable harm to MegaGen, including injury to MegaGen's business, reputation, and goodwill, for which there is no adequate remedy at law. MegaGen is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining the Corporate Defendants, their agents, employees, representatives, and all persons acting in concert with the Corporate Defendants from engaging in future acts of infringement and counterfeiting.

- 24 -

78.     Pursuant to 15 U.S.C. § 1117, MegaGen is entitled to recover from the Corporate Defendants monetary damages, including the Corporate Defendants' profits, damages sustained by MegaGen, and the costs of this action. In addition, because the Corporate Defendants' unlawful conduct was undertaken willfully and in bad faith, this an exceptional case, entitling MegaGen to an award of treble damages, statutory damages, and attorneys' fees.

## COUNT IV
## UNFAIR COMPETITION (N.J.S.A. § 56:4-1)
### (Against All Defendants)

79.     MegaGen repeats and realleges the preceding paragraphs as if fully set forth herein.

80.     The Defendants are not authorized to use MegaGen's ANYRIDGE mark or to sell products under the ANYRIDGE trademark.

81.     The Defendants are offering for sale and/or selling dental implant products using the ANYRIDGE mark without MegaGen's permission.

82.     The Defendants' use of the ANYRIDGE mark is likely to cause confusion, mistake and/or deception as to the source or origin of Defendants' goods and/or services, and falsely suggests that the Defendants and their goods are sponsored by, connected to, or associated with MegaGen.

83.     The Defendants' wrongful use of the ANYRIDGE mark is knowing, deliberate, and willful.

*ACTIVE 687900380v1*

84.     The Defendants wrongful use of the ANYRIDGE mark in furtherance of the sale of the Counterfeit Products constitutes unfair competition in violation of N.J.S.A. § 56:4-1.

85.     As a direct and proximate result of the Defendants' actions described herein, MegaGen has suffered, and will continue to suffer, irreparable injury to its business, reputation, and goodwill unless and until the Court enjoins Defendants' actions. MegaGen has no adequate remedy at law.

86.     As a direct and proximate result of the Defendants' actions described herein, MegaGen has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

**COUNT V**
**COMMON LAW UNFAIR COMPETITION**
**(Against All Defendants)**

87.     MegaGen repeats and realleges the preceding paragraphs as if fully set forth herein.

88.     The Defendants are not authorized to use MegaGen's ANYRIDGE mark or sell products under the ANYRIDGE trademark.

89.     The Defendants are offering for sale and/or selling dental implant products using the ANYRIDGE mark without MegaGen's permission.

90.     The Defendants' use of the ANYRIDGE mark is likely to cause confusion, mistake and/or deception as to the source or origin of Defendants' goods and/or services, and falsely suggests that the Defendants and their goods are sponsored by, connected to, or associated with MegaGen.

- 26 -

91.     The Defendants' wrongful use of the ANYRIDGE mark is knowing, deliberate, and willful.

92.     The Defendants wrongful use of the ANYRIDGE mark in furtherance of the sale of the Counterfeit Products constitutes unfair competition in violation of N.J.S.A. § 56:4-1.

93.     As a direct and proximate result of the Defendants' actions described herein, MegaGen has suffered, and will continue to suffer, irreparable injury to its business, reputation, and goodwill unless and until the Court enjoins Defendants' actions. MegaGen has no adequate remedy at law.

94.     As a direct and proximate result of the Defendants' actions described herein, MegaGen has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

<u>**COUNT VI**</u>
**TORTIOUS INTERFERENCE**
**(Against All Defendants)**

95.     MegaGen repeats and realleges the preceding paragraphs as if fully set forth herein.

96.     MegaGen enjoys a reasonable expectation of economic advantage through its existing and prospective business relationships with dentists, oral surgeons, distributors, and other parties relating to the manufacturing, sale, and distribution of its dental implant systems, including ANYRIDGE.

97.     At all times relevant, the Defendants have had actual, constructive, and/or inquiry knowledge of MegaGen's advantageous business relationships with MegaGen's customers and distributors.

98.     Notwithstanding such actual, constructive, and/or inquiry knowledge, the Defendants, acting alone and/or in concert with each other, have unreasonably interfered—and, upon information and belief, continue to unreasonably interfere—with MegaGen's pursuit of current and prospective economic advantage with its customers and distributors. The Defendants' intentional conduct was wrongful, malicious, and unjustified, and was undertaken for the purpose of redirecting MegaGen's customers and distributors to Defendants' own products.

99.     Upon information and belief, among other things, the Defendants have falsely represented to MegaGen's customers and distributors via letters, documents, and oral communications that ANYRIDGE products have been "failing and fracturing" with "ever-increasing" frequency.

100.    Upon information and belief, the Defendants intended the dissemination of false information and statements to cause third parties to discontinue doing business with MegaGen, and to begin doing business with the Defendants. Upon information and belief, the false statements have, in fact, caused third parties not to do business with MegaGen, including purchasing ANYRIDGE products from MegaGen.

101.    As a direct and proximate result of the Defendants' interference, MegaGen has suffered, and will continue to suffer, damages in an amount to be determined at trial.

- 28 -

**COUNT VII**
**TRADE LIBEL**
**(Against All Defendants)**

102.    MegaGen repeats and realleges the preceding paragraphs as if fully set forth herein.

103.    At all times relevant, the Defendants have had actual, constructive, and/or inquiry knowledge of MegaGen's advantageous business relationships with MegaGen's customers and distributors.

104.    Notwithstanding such actual, constructive, and/or inquiry knowledge, and upon information and belief, the Defendants have falsely represented to MegaGen's customers and distributors via letters, documents, and oral communications that ANYRIDGE products have been "failing and fracturing" with "ever-increasing" frequency.

105.    The Defendants' intentional conduct was wrongful, malicious, and unjustified, and was undertaken for the purpose of redirecting MegaGen's customers and distributors to the Defendants' own products.

106.    Upon information and belief, the Defendants' dissemination of false information and statements about ANYRIDGE-branded products has played a material part in inducing third parties to discontinue doing business with MegaGen, and to begin doing business with the Defendants.

107.    As a direct and proximate result of the Defendants' libelous statements, MegaGen has suffered, and will continue to suffer, damages in an amount to be determined at trial.

*ACTIVE 687900380v1*

## PRAYER FOR RELIEF

**WHEREFORE**, MegaGen respectfully requests the following relief:

    a.    As to Counts I and III, enter judgment in favor of MegaGen, issue an injunction restraining the Corporate Defendants from engaging in future acts of infringement and counterfeiting, and award MegaGen monetary damages, including the Corporate Defendants' profits, damages sustained by MegaGen, treble damages, statutory damages of $2,000,000 for each and every counterfeit use of the ANYRIDGE mark, and attorneys' fees;

    b.    As to Count II, enter judgment in favor of MegaGen, issue an injunction restraining the Individual Defendants from engaging in future acts of vicarious and contributory infringement and counterfeiting, and award MegaGen monetary damages, including the Individual Defendants' profits, damages sustained by MegaGen, treble damages, statutory damages of $2,000,000 for each and every counterfeit use of the ANYRIDGE mark, and attorneys' fees;

    c.    As to Count IV, enter judgment in favor of MegaGen, issue an injunction restraining the Defendants from engaging in future acts of infringement and counterfeiting, and award MegaGen monetary damages;

    d.    As to Count V, enter judgment in favor of MegaGen, issue an injunction restraining the Defendants from engaging in future acts of infringement and counterfeiting, and award MegaGen monetary damages;

    e.    As to Counts VI and VII, enter judgment in favor of MegaGen and award MegaGen monetary damages;

    f.    Grant other such relief as the Court deems just and proper.

## JURY DEMAND

MegaGen hereby demands a trial by jury on all issues so triable.

- 30 -

Respectfully submitted,

MEGAGEN IMPLANT CO. LTD.

By its attorneys,


*/s/ James L. Ryerson*
James L. Ryerson (Bar No. 035492009)
GREENBERG TRAURIG, LLP
500 Campus Drive
Suite 400
Florham Park NJ 07932
Tel: (973) 443-3246
ryersonj@gtlaw.com

Zachary C. Kleinsasser*
John F. Farraher, Jr.*
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
(617) 310-6029
kleinsasserz@gtlaw.com
farraherj@gtlaw.com

* *Pro hac vice* applications forthcoming

Dated:  June 5, 2023

- 31 -